IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **POLESTAR LA ALEXANDRIA (JACKSON), LLC and POLESTAR GA WAYCROSS (PLANT), LLC,** | § | |
| Plaintiffs, | § | |
| **v.** | § | **Civil Action No. 3:25-CV-1470-L** |
| **BENEFIT STREET PARTNERS REALTY OPERATING PARTNERSHIP, L.P.,** | § | |
| Defendant. | | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Plaintiffs Polestar LA Alexandria (Jackson) LLC and Polestar GA Waycross (Plant) LLC's ("Plaintiffs") Motion for Leave to File a Second Amended Complaint ("Motion") (Doc. 26), filed May 5, 2026. Defendant Benefit Street Partners Realty Operating Partnership, L.P. ("Defendant") oppose the Motion and filed a Response on May 26, 2026 (Doc. 29). Plaintiffs filed a Reply on June 9, 2026 (Doc. 30). After considering the Motion, briefs, record, and applicable law, the court **denies** Plaintiffs' Motion (Doc. 26) insofar as it seeks to leave to file the proposed Second Amended Complaint ("SAC"). The court will, however, permit Plaintiffs leave to file a third amended complaint no later than **December 18, 2026**. In doing this, Defendant's Motion to Dismiss Plaintiff's First Amended Complaint ("Motion to Dismiss") (Doc. 19) is **denied as moot**.

No scheduling order has been issued in this action, and Plaintiffs seek leave to amend pursuant to Federal Rule of Civil Procedure 15(a)(2), which provides in part that a "[c]ourt shall freely give leave when justice so requires." The decision to allow amendment of a party's pleadings

under Rule 15(a) is within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (citation omitted). In determining whether to allow an amendment of the pleadings, a court considers the following: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182; *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted).

Plaintiffs wish to amend their Complaint to restate the four existing claims with greater specificity in conformity with federal pleading standards.

## I. Bad Faith and Dilatory Motive

Defendant argues that Plaintiffs' bad faith and dilatory motive can be inferred because the Motion is an attempt by Plaintiffs to avoid an unfavorable ruling on Defendant's pending Motion to Dismiss. The court disagrees, and Defendant may file a second motion to dismiss if it believes that Plaintiffs' amended pleadings fail to state a claim upon which relief can be granted.

Defendant contends that the underlying facts have not changed, and Plaintiffs have repeatedly been unable to state a claim. Defendant relies on two Fifth Circuit cases that affirmed the district court's denial of a motion to amend based on bad faith and dilatory motive. *See Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993); *Barrett v. Independent Order of Foresters*, 625 F.2d 73, 75 (5th Cir. 1980). In *Wimm,* however, a motion for summary judgment had been filed, and some informal discovery had taken place, and in *Barrett*, the plaintiff sought to add several new parties and counts. No motion for summary judgment has been filed, and Plaintiffs do not seek to add additional parties or claims. Moreover, "[w]hether leave to amend should be granted is entrusted to the sound discretion of the district court, and that court's ruling is reversible

only for an abuse of discretion." *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 644 (5th Cir. 2007) (quoting *Wimm*, 3 F.3d at 139). While it is true that Plaintiffs likely could have cured deficiencies when it filed its First Amended Complaint, the law is that dismissal is appropriate when a party repeatedly fails "to cure deficiencies by amendments previously allowed." *Foman*, 371 U.S. at 182. Although Plaintiffs have amended their pleadings several times, the court has not yet addressed any deficiencies. Indeed, this case was removed to federal court on June 9, 2025, and on July 9, 2025, Defendant moved for Judgment on the Pleadings (Doc. 8). On July 30, 2025, Plaintiffs filed a Motion for Leave to File an Amended Complaint (Doc. 12). On March 31, 2026, the court issued a Memorandum Opinion and Order (Doc. 16) denying Defendant's Motion for Judgment on the Pleadings and permitting Plaintiffs to amend. The court did not conduct analysis on the underlying claims. On March 31, 2026, Plaintiffs' Amended Complaint (Doc. 17) was filed, and on April 14, 2026, Defendant filed a Motion to Dismiss the First Amended Complaint (Doc. 19) which remains pending. On May 5, 2026, Plaintiffs filed a Motion for Leave to File a Second Amended Complaint, which brings us to present. Again, the court notes that Plaintiffs have had several opportunities to amend, but the deficiencies were not identified.

## II. Prejudice

Defendant next argues that it would be prejudiced if Plaintiffs are allowed to file a SAC because it has been repeatedly forced to address the claims and would have to seek dismissal under Rule 12(b)(6) again. The court is not convinced that allowing Plaintiffs leave to amend would legally prejudice Defendant. No scheduling order has been entered in this case, there are no pending discovery or motion deadlines, and Defendant will be permitted to refile its Motion to Dismiss if it believes that Plaintiffs' amended pleading fails to state a claim.

## III. Futility

Defendant's last argument is that leave to file the proposed SAC should be denied as futile. Futility is interpreted under Rule 15, to mean "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co.,* 234 F.3d 863, 873 (5th Cir. 2000). Thus, the Rule 12(b)(6) standard applies. *Id.* (citations omitted).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way:

> A motion to dismiss for failure to state a claim concerns the formal sufficiency of the statement of the claim for relief, not a lawsuit's merits. So when reviewing such a motion, we assume that the facts the complaint alleges are true and view those facts in the light most favorable to the plaintiff. The complaint survives if it contains sufficient factual matter . . . to state a claim to relief that is plausible on its face.

*Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 582 (5th Cir. 2020) (citations and quotation marks omitted). Accordingly, the denial of a 12(b)(6) motion has no bearing as to whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge.

A statute of limitations may support dismissal pursuant to Rule 12(b)(6) when it is evident from a plaintiff's pleadings that the action is time-barred and the pleadings fail to set forth or raise some basis for tolling the statute. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) (citations omitted).

Both parties refer to their briefing on Defendant's Motion to Dismiss (Docs. 19-21, 23-25, & 27-28) to support their assertions regarding futility of the SAC. The court does not allow parties to incorporate arguments made in other submissions because it becomes confusing. Moreover, by incorporating their submissions, the parties exceed the page limit provided by Local Rule 7.2. Thus, the court will not consider the parties' submissions related to Defendant's Motion to Dismiss.

**A. Background**

Plaintiffs allege the following facts in their proposed SAC. Doc. 26-1. On June 6, 2022, Plaintiffs, as the sellers, entered into a Real Estate Contract with a non-party buyer that contained a closing date of July 12, 2022. *Id.* ¶ 9. Under the contract, the buyer was to deposit $1,000,000 in earnest money with Miller Title, the designed escrow officer. *Id.* ¶ 10. The contract provided that "in the event that [b]uyer fails to close on the [p]roperty, the [e]arnest [m]oney shall be delivered to the [s]eller. . . ." *Id.* (citing Ex. A). Plaintiff contends that upon deposit of the earnest money into escrow, it held equitable title in the funds in a particular account denominated as "Escrow Account." *Id.* The buyer failed to close on the property, so Plaintiffs made a demand for release of the funds. *Id.* ¶ 12. Plaintiffs believed that Miller Title had elected to refund the earnest money to the buyer. *Id.* (citing Ex. B).

On March 15, 2024, a meeting was held regarding a chapter 7 bankruptcy of Miller Title. *Id.* ¶ 13. The Plaintiffs discovered for the first time wire transfers dated July 8, 2022, between Miller Title and Defendant that totaled $1,000,000. *Id.,* Ex. C.

Plaintiffs allege that Defendant was in pursuit of the buyer based on unrelated transactions. *Id.* ¶ 11. It is Plaintiffs' belief that Defendant learned of the earnest money and made a demand in early July 2022 that Miller Title disburse the funds to it. *Id.* Plaintiffs contend that Defendant misrepresented to Miller Title that it has a superior legal right to the funds; therefore, Miller Title wired Defendant the funds. *Id.* Plaintiff alleges that it remains an open question whether the $1,000,000 that Miller Title wired to Defendant was the escrow money. *Id.* Plaintiffs bring claims of conversion, money had and received, tortious interference, and knowing participation in breach of fiduciary duty against Defendant.

### B. Statute of Limitations and Fraudulent Concealment

Defendant first argues that Plaintiffs' conversion, money had and received, and tortious interference claims are barred by the two-year statute of limitations. Tex. Civ. Prac. & Rem. Code Ann. § 16.003 (statue of limitations for conversion of personal property is two years); *Pollard v. Hanschen*, 315 S.W.3d 636 (Tex. App.—Dallas 2010, no pet.) (statute of limitations for money had and received is the same as unjust enrichment—two years); *Burke v. Ins. Auto Auctions Corp.*, 169 S.W.3d 771, 776 (Tex. App.—Dallas 2005, pet. denied) (statute of limitations for tortious interference is two years). The alleged wrongdoing occurred in early July 2022; therefore, the statute of limitations tolled in July of 2024. Plaintiffs filed this case in state court on May 6, 2025, outside of the limitations period; thus, the claims would be barred absent tolling.

Plaintiffs argue that Defendant's fraudulent concealment tolls the limitation period. "[F]raudulent concealment is a fact-specific equitable doctrine that tolls limitations until the fraud

is discovered or could have been discovered with reasonable diligence." *Valdez v. Hollenbeck*, 465 S.W.3d 217, 229 (Tex. 2015).

Defendant contends that Plaintiffs' fraudulent concealment defense is fatally flawed for two reasons. Doc. 29 at 8-9. First, Plaintiffs have not set forth facts in the proposed SAC that meet Rule 9(b)'s heightened standard. *Id*. Second, Plaintiffs were on sufficient notice of issues with the earnest money as early as July 21, 2022. *Id.*

1. Rule 9(b) Pleading Standard

Defendant contends that Plaintiffs' fraudulent concealment pleadings do not meet the heightened Rule 9(b) standard. A dismissal for failure to plead fraud with particularity pursuant to Rule 9(b) is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim. *McCall v. Genentech, Inc.*, No. 3:10-CV-1747-B, 2011 U.S. Dist. LEXIS 65912, at *7, 2011 WL 2312280, at *3 (N.D. Tex. June 9, 2011) (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)). Rule 9(b) contains a heightened pleading standard and requires a plaintiff to plead the circumstances constituting fraud with particularity. *See* Fed. R. Civ. P. 9(b); *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010). "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs*., 112 F.3d 175, 177 (5th Cir. 1997). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003). Fraudulent concealment is subject to Rule 9(b)'s heightened pleading standard. *See Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001) ("Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not."); *Summer*

*v. Land & Leisure, Inc.*, 664 F.2d 965 (5th Cir. 1981) (applying Rule 9(b) to a fraudulent concealment case).

Many of Plaintiffs' allegations are "upon information and belief" which would not generally satisfy the Rule 9(b) standard; however, Rule 9(b) may be somewhat relaxed where "the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge." *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 385 (5th Cir. 2003) (citation omitted). This is not a license to base claims "on speculation and conclusory allegations." *Id*. The complaint must still "set forth a factual basis for such belief." *Id.*

Plaintiffs have alleged facts in the proposed SAC that taken as true set forth a basis for their *belief* that Defendant engaged in fraudulent concealment. Plaintiffs contend upon information and belief that Defendant was in pursuit of the buyer who deposited the escrow money. Doc. 26-1 ¶11. Plaintiffs allege upon information and belief that in early July 2022, Defendant misrepresented to Miller Title that it had a superior right to the escrow money than Plaintiffs. *Id.* Plaintiffs also attached exhibits to its proposed SAC that show outbound wire transactions from Miller Title to Defendant totaling $1,000,000 which was the same amount as the escrow funds. *Id.* ¶ 13. Plaintiffs contend that Miller Title would not have wired Defendant the money absent the misrepresentation. *Id.* ¶ 11. The problem is that Plaintiffs do not plead in the proposed SAC and do not argue that they should be held to a lesser pleading standard or that the facts relating to the alleged fraud are peculiarly in Defendant's knowledge. The court, however, believes that Plaintiffs can correct this deficiency in a third amended complaint.

2. Notice of the Issues with the Earnest Money

Defendant also argues that Plaintiffs were on notice of the potential issues with the escrow money as early as July 21, 2022 when they sent Miller Title a demand letter regarding the funds.

Doc. 29 at 9. Defendant secondarily argues that Plaintiffs filed a lawsuit against Miller Title in state court on August 12, 2022, which should have given them notice to investigate what happened to the escrow money. The Texas Supreme Court has held that

> [t]he estoppel effect of fraudulent concealment ends when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action. Knowledge of such facts is in law equivalent to knowledge of the cause of action.

*Colonial Penn Ins. Co. v. Market Planners Ins. Agency, Inc.*, 1 F.3d 374, 377 (5th Cir. 1993) (citing *Borderlon v. Peck*, 661 S.W.2d 907, 909 (Tex. 1983). This means that the limitations period is tolled only until such time that Plaintiffs learned of the right of action or should have known through the exercise of reasonable diligence. *Id.* (citations omitted).

Plaintiffs allege that they first discovered the wire transfers between Miller Title and Defendant on March 15, 2024, at a creditors meeting during Miller Title's chapter 7 bankruptcy proceedings. Doc. 26-1 ¶ 44. Taking the allegations in the proposed SAC as true, Plaintiffs have plausibly alleged that they did not discover the wire transfers between Miller Title and Defendant until March 14, 2024, which would toll the limitations period until such date.

### C. Conversion

Under Texas law to assert a claim of conversion a plaintiff must allege:

> (1) the plaintiff[ ] owned, had legal possession of, or was entitled to possession of the property; (2) the defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with the plaintiff's rights; and (3) the defendant refused plaintiff's demand for the return of the property.

*D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 212 (5th Cir. 2018) (quoting *Cuidado Casero Home Health of El Paso, Inc. v. Ayuda Home Health Care Servs., LLC*, 404 S.W.3d 737, 748 (Tex. App.—El Paso 2013, no pet.)). "Money may be the subject of an action for conversion if the fund can be described or identified as a specific chattel." *First Nat'l Bank of Bellaire v. Hubbs*, 566

S.W.2d 375, 377 (Tex. Civ. App.—Houston [1st Dist.] 1978). "Specifically, actions for conversion of money are available in Texas only where money is (1) delivered for safekeeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper." *United States v. Boardwalk Motor Sports, Ltd.*, 692 F.3d 378, 381 (5th Cir. 2012) (citations omitted).

Plaintiffs allege that the escrow funds were delivered to Miller Title as an escrow officer, and the funds were intended to be kept segregated for future disbursement depending on certain conditions. Doc. 26-1 ¶ 17. Plaintiffs allege that the funds were not subject to a competing title claim or available for general indebtedness of Miller Title. *Id.* ¶ 18. Miller Title wired the funds to Defendant, and Defendant retained the funds. *Id.* Plaintiffs allege that by keeping the funds, Defendant exercised wrongful dominion and control over the funds. *Id.* Plaintiffs contend that Miller Title requested the return of the funds and Defendant did not provide a meaningful response. *Id.* As a result of Defendant's acts Plaintiffs allege that they have suffered damages in the amount of $1,000,000. *Id.* ¶ 19.

Defendant argues that Plaintiffs did not allege (1) that they held a legally cognizable property interest in the specific escrow funds; (2) that the money at issue is traced as a specific chattel; or (3) that Defendant exercised control over the escrow funds in an unauthorized manner. The court finds some merit in the first argument. Plaintiffs, however, did not reply to these arguments, which makes it difficult for the court to thoroughly address the issues. As Defendant correctly notes, the proposed SAC does not allege that Plaintiffs held legal title in the escrow funds at the time of the alleged conversion. Rather, Plaintiffs allege that they had equitable title in the escrow funds at the time of deposit. Doc. 26-1 ¶¶ 1, 10, 17-18, 21, 23, 28, 30, 35, 37, & 43-44. Despite this deficiency, the court cannot reasonably conclude at this juncture that Plaintiffs have

pled their best case as to conversion. Thus, Plaintiffs will be permitted to amend their complaint to resolve the deficiency identified.

As to the other arguments, first, the court is satisfied that Plaintiffs have alleged that the escrow money can be specifically identified, as it was intended to be kept separate in an "Escrow Account." Doc. 26-1 ¶ 10. Second, Plaintiffs allege that Defendant exercised unlawful control over the funds when it misrepresented that it had a superior legal right to the funds and refused to return them. *Id.* ¶¶ 17-18.

**D. Money Had and Received (Unjust Enrichment)**

Under Texas law to state a claim for money had and received, Plaintiffs must allege "that the [defendant] held money which in equity and good conscience belonged to . . ." them. *Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 840 (5th Cir. 2004) (quoting *Miller–Rogaska, Inc. v. Bank One, Texas, N.A.*, 931 S.W.2d 655, 662 (Tex.App.—Dallas 1996)). Plaintiffs have allege in the proposed SAC that they held equitable title in the escrow funds and that by Defendant retaining the funds it has been unjustly enriched. Doc. 20-1 ¶ 23. The court is satisfied that Plaintiffs' money had and received claim is not futile.

**E. Tortious Interference with a Contract**

Under Texas law, tortious interference is an intentional tort. "To recover for tortious interference with an existing contract, a plaintiff must prove: (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) the act was a proximate cause of the plaintiff's damages; and (4) actual damage or loss." *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 210 (Tex. 1996) (citing *Holloway v. Skinner*, 898 S.W.2d 793, 795–96 (Tex. 1995)). Regarding proximate cause, Plaintiffs must allege facts to support that Defendant "took an active part in persuading a party to a contract to breach it." *Amigo Broad., LP v. Spanish Broad. Sys.,*

*Inc.*, 521 F.3d 472, 493 (5th Cir. 2008) (citing *Davis v. HydPro, Inc.*, 839 S.W.2d 137, 139 (Tex.App.1992)).

Plaintiffs allege in the proposed SAC that Miller Title became an escrow fiduciary tasked with complying with the specific terms of Sections 4(c) and 12 of the Real Estate Contract. Doc. 26-1 ¶ 28. Plaintiffs contend that Defendant misrepresented that it had superior legal right to the escrow funds causing Miller Title to wire it the funds. *Id.* ¶ 30. Plaintiffs allege that this was willful and intentional interference with the Real Estate Contract. *Id*. Plaintiff contends that Miller Title demanded that Defendant return the funds, but it has provided no meaningful response. *Id*. Plaintiffs allege that Miller Title would not have wired Defendant's the funds absent Defendant's alleged misrepresentation. *Id.*¶ 11. The court is satisfied that Plaintiffs' tortious interference claim is not futile.

### F. Knowing Participation in Breach of Fiduciary Duty

Under Texas law, the elements of knowing participation in a breach of fiduciary duty are "(1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of a fiduciary relationship." *D'Onofrio,* 888 F.3d at 216 (citation omitted).

Plaintiffs allege that upon Miller Title accepting the $1,000,000 in earnest money into escrow that it became an escrow fiduciary that was required to comply with the Real Estate Contract. Doc. 26-1 ¶ 35. Plaintiffs contend that Miller Title wired the earnest money to Defendant upon Defendant's demand resulting in a breach of Miller Title's fiduciary duties. *Id.* ¶¶ 36-37. Plaintiffs allege that Defendant knowingly participated in the breach of fiduciary duty by inducing the wire transfers. *Id*. ¶ 39.

Defendant argues, and the court agrees that Plaintiffs have not clearly alleged facts that support Defendant knew of the fiduciary relationship between Miller Title and Plaintiffs. Again, Plaintiffs did not reply to this argument, which makes it difficult for the court to analyze it. Despite this, the court is not convinced at this juncture that Plaintiffs have pled their best case as to knowing participation in breach of fiduciary duty. Therefore, the court will allow Plaintiffs to correct the deficiencies, herein identified, in a third amended complaint.

## IV. Conclusion

Having considered the Motion, Response, Reply, record, and applicable law, the court **denies** Plaintiffs' Motion (Doc. 26) insofar as it seeks leave to file the proposed SAC. To avoid piecemeal litigation, allow the court to address any amended pleadings and motions to dismiss in one order, and preserve scarce judicial resources, the court **directs** Plaintiffs to file an amended pleading that addresses the deficiencies herein identified by the court no later than **December 18, 2026**. There is no indication that they cannot, or are unwilling to, cure the pleading defects the court has identified. In allowing Plaintiffs to amend their pleadings, Defendant's Motion to Dismiss (Doc. 19) is **denied as moot**. Plaintiffs must allege in their Third Amended Complaint all claims they wish to assert in accordance with the court's instructions by **December 18, 2026.** If they fail to cure the pleading deficiencies identified by the court, their action against Defendant is subject to dismissal with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6), or without prejudice pursuant to Federal Rule of Civil Procedure 41(b) for failure to prosecute and comply with a court order. As previously noted by the court, Defendant may file a motion to dismiss if it believes that Plaintiffs fail to state a claim upon which relief can be granted in their Third Amended Complaint.

**It is so ordered** this 19th day of November, 2026.

Sam A. Lindsay
United States District Judge